UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRENDA HANSHAW,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 08-434-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 8, 2008, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 18, 2008, and May 16, 2008. The parties filed a Joint Stipulation on December 10, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 16, 1963. [Administrative Record ("AR") at 64.] She has a ninth grade education[1] [AR at 357] and no past relevant work experience. [AR at 62-63, 382-84.]

On August 21, 2004, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since March 1, 1998, due to high blood pressure, high cholesterol, migraines, chest pain, and mild mental retardation. [AR at 12, 64-66, 67, 69, 353-54.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 40, 44-49, 52-56.] A hearing was held on September 11, 2007, at which plaintiff appeared with counsel and testified on her own behalf. Testimony was also received from medical and vocational experts. [AR at 351-89.] On September 20, 2007, the ALJ determined that plaintiff was not disabled. [AR at 12-19.] Plaintiff requested review of the hearing decision. [AR at 8.] The Appeals Council denied plaintiff's request for review on February 28, 2008. [AR at 5-7.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

---

[1] In her Disability Report, plaintiff indicated that she had completed the tenth grade. [AR at 75, 86.] However, plaintiff clarified at the hearing that she attended the tenth grade but did not complete it. [AR at 357.]

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
2  and the claim is denied. Id. The claimant has the burden of proving that she is unable to
3  perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a
4  prima facie case of disability is established. The Commissioner then bears the burden of
5  establishing that the claimant is not disabled, because she can perform other substantial gainful
6  work available in the national economy. The determination of this issue comprises the fifth and
7  final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828
8  n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since August 21, 2004, the application date." [AR at 14.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: obesity, migraine headaches, and positional vertigo. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 15.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a narrowed range of light work.[3] Specifically, the ALJ determined that plaintiff "can lift and/or carry 10 pounds frequently and 20 pounds occasionally"; "[o]ut of an 8-hour period, she can stand and/or walk for 2 hours and sit for 8 hours"; she cannot balance or climb ladders, ropes, or scaffolds; she "can occasionally climb stairs, bend, stoop, crouch, kneel or crawl"; she "must avoid concentrated exposure to extremely hot or cold temperatures, and requires an air-conditioned environment"; she "cannot work at unprotected heights or around dangerous, moving machinery"; and she "can perform 4 to 5-step moderately complex tasks." [Id.] At step four, the ALJ concluded that plaintiff was "unable to perform any past

---

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]  Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

relevant work."[4]  [AR at 17.]  At step five, the ALJ found, based on the vocational expert's testimony, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 17-18.]  Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 18-19.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider the treating physician's opinion; (2) properly consider the impact of plaintiff's obesity on her other impairments; (3) properly consider plaintiff's credibility; (4) properly develop the record regarding plaintiff's left ventricular thickening, calcium on the brain, headaches, and mild mental retardation; and (5) properly consider lay witness testimony.  Joint Stipulation ("Joint Stip.") at 2-3.  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.   TREATING PHYSICIAN'S OPINION**

Plaintiff argues that the ALJ failed to properly consider the treating physician's opinion. Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician, Dr. S. Wiltem.  Joint Stip. at 3-4.

As an initial matter, the Court notes that the opinion cited by plaintiff appears to have actually been rendered by Sandra Spiedel, a nurse practitioner.  [AR at 347.]  At issue is the "Statement of Provider" section of a medical information form dated August 7, 2007, in which the author of the statement section indicated that plaintiff was unable to work due to her vertigo and right knee pain.  [Id.]  The author also reported that plaintiff's condition, with an onset date of April 17, 2006, was chronic and that it affected her ability to participate in education or training.  [Id.] The "Provider Certification" section of the medical information form bears the printed name of a

---

[4]   At the hearing, the ALJ found that plaintiff had no past relevant work experience.  [AR at 62-63, 384.]

5

doctor (which is illegible)[5] next to that of Ms. Spiedel. However, it only bears Ms. Spiedel's signature. [Id.] It thus appears that the opinion was authored by Ms. Spiedel and not the doctor.

In his decision, the ALJ did not discuss or even mention Ms. Spiedel's opinion. This was error.

The Commissioner requires evidence from "acceptable medical sources" in order to establish whether a claimant has medically determinable impairments. 20 C.F.R. §§ 404.1513(a), 416.913(a). "Acceptable medical sources" include licensed physicians, psychologists, optometrists, and podiatrists, as well as qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). However, the Commissioner may consider observations by "other sources" to show the severity of the claimant's impairments and how they affect the claimant's ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d). "Other sources" include nurse practitioners, physicians' assistants, therapists, educational personnel, social welfare agency personnel, relatives, friends, and clergy. 20 C.F.R. §§ 404.1513(d)(1)-(4), 416.913(d)(1)-(4). Opinions from "other sources" may be given less weight than those from "acceptable medical sources." Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir.), cert denied, 519 U.S. 881 (1996).

Ms. Spiedel is not an "acceptable medical source,"[6] and, thus, her opinion could have been afforded less weight than the opinions of the consultative physicians upon whom the ALJ relied.[7]

---

[5] The Court's review of the doctor's printed name reveals that the initial of the first name is "S" and the first three letters of the last name are "Wil" (with the remaining letters of the last name being illegible). [AR at 347.] While plaintiff in the Joint Stipulation refers to this individual as Dr. "Wiltem," the record does not appear to contain any other documents containing that name. It is possible that the name of the doctor in question is Dr. Samuel Wilson, one of plaintiff's treating physicians. [AR at 320, 347.] The identity of this doctor should be clarified on remand.

[6] An individual who has traditionally been considered an "other source" (e.g., nurse practitioner) can be deemed part of an "acceptable medical source" where the individual works under the supervision of an "acceptable medical source" (e.g., a doctor), and acts as an agent of the "acceptable medical source" in the individual's relationship with the patient. Gomez, 74 F.3d at 971. Here, there is no evidence that Ms. Spiedel was acting as an "agent" of a treating physician. Nor does the record clearly show that Ms. Spiedel was working under the supervision of a treating physician.

[7] Although not expressly stated, the ALJ's RFC determination reflects his reliance upon the opinions of the medical experts, Dr. Lowell Sparks and Dr. William Soltz, both of whom testified

6

Nevertheless, the ALJ was required to address Ms. Spiedel's opinion in his decision, and if the ALJ wished to reject it, he needed to explain the weight given to that opinion. See Vincent v. Heckler, 739 F.2d 1393 1394-95 (9th Cir. 1984) (citation omitted) (the ALJ need not discuss all of the evidence presented but must explain why he rejected "significant probative evidence"); see also SSR 06-03P ("Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). Accordingly, remand is warranted on this issue.

**B.    OBESITY**

Plaintiff argues that the ALJ failed to properly consider the impact of her obesity on her ability to work. Joint Stip. at 7-11. Specifically, plaintiff contends that the ALJ "failed to determine the effect of [her] obesity upon her other impairments, her ability [to] competitively work on a regular and continuing basis, and her general health." Joint Stip. at 8.

The medical records show that plaintiff complained of and was treated for hypertension, chest pain, headache, dizziness, and vertigo.[8] [AR at 211-64, 297-345.] On numerous occasions, the treating physicians noted that plaintiff was obese. [AR at 306, 309, 315, 331, 338.] At the hearing, plaintiff testified that she was 5 feet 9 inches tall and weighed 275 pounds. [AR at 355-56.]

---

at the hearing. [AR at 15, 358-66, 386-88.]

[8] Plaintiff was weighed at various medical offices on numerous occasions. Her weight ranged from 215 to 270 pounds. [AR at 199, 214-16, 230, 239, 305-06, 309, 320, 331-32, 338, 343.]

Dr. Sparks, an internist, testified at the hearing regarding plaintiff's physical impairments. Specifically, Dr. Sparks noted that he had reviewed plaintiff's medical records and determined that she suffered from numerous impairments including migraines, benign positional vertigo, obesity, hypertension (controlled), and hyper-cholesterol anemia (controlled). [AR at 359-60.] He opined that plaintiff did not have any impairments, either individually or in combination, that met or equaled a listing. [AR at 360.] Dr. Sparks then assessed the following limitations: plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand and walk for a total of six hours; could sit six hours; could not climb ladders, ropes, or scaffolds; could not balance; could occasionally climb stairs and ramps; could occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme heat or cold; and must avoid exposure to unprotected heights or hazardous machinery. [AR at 360-61.]

In his decision, the ALJ found that plaintiff had several severe impairments consisting of obesity, migraine headaches, and positional vertigo.[9] [AR at 14.] He then found that plaintiff's impairments did not meet or equal a listing. [AR at 15.] Thereafter, the ALJ took into account plaintiff's obesity in determining her RFC, stating as follows:

> [Plaintiff] is obese at 67 inches and 250 pounds (Exhibit 5F, p. 3). While obesity is a risk factor and the effect it has on total body function must be considered (Social Security Ruling 02-1p), there is no evidence of any disabling musculoskeletal, respiratory, or cardiovascular impairment or that the obesity is causing any other disabling problems. [Plaintiff's] obesity might cause limitations in exertion and in functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect her ability to do postural functions such as climbing, balance, stooping, and crouching. [Plaintiff's] obesity was considered and factored into the residual functional capacity assessment for a narrowed range of light work with the additional nonexertional limitations set forth.

[AR at 17.]

---

[9] Plaintiff argues that "there is no indication that the ALJ considered the impact of plaintiff's obesity when he made the step two determinations." Joint Stip. at 9. This argument is unavailing as step two was decided in plaintiff's favor, with obesity as one of plaintiff's severe impairments. [AR at 14.]

Social Security Ruling[10] ("SSR") 02-01p provides that an ALJ is required to consider an individual's obesity at steps two through five of the sequential evaluation, and requires that obesity be considered in combination with the individual's other impairments. Plaintiff bears the burden of producing medical evidence about the impact of her obesity on her other impairments at steps three and four.[11] See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability in steps one through four of the analysis); see also 20 C.F.R. §§ 404.1512, 416.912 ("In general, you have to prove to us that you are blind or disabled . . . . This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) . . . ."). The record does not contain any medical opinions or treatment notes indicating that plaintiff's obesity, in combination with her other impairments, meets a listing, or that she has any additional limitations arising therefrom. Moreover, the ALJ's findings are supported by Dr. Sparks, who specifically considered plaintiff's obesity. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). As such, the Court finds that the ALJ properly determined the impact of plaintiff's obesity on her ability to work. Accordingly, remand is not warranted on this issue.

**C.   FAILURE TO DEVELOP THE RECORD**

Plaintiff contends that the ALJ failed to properly develop the record regarding her heart problem, "calcium on the brain," headaches and mild mental retardation. Joint Stip. at 17-19. Specifically, plaintiff alleges that, at a minimum, the ALJ should have requested medical records

---

[10] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[11] Plaintiff incorrectly notes that the ALJ found that plaintiff had severe impairments of diabetes mellitus and "status-post stroke with residual neurological deficits involving the left lower extremity." Joint Stip. at 8. The ALJ made no such finding, and there is no evidence of these impairments in the record.

regarding these impairments and/or subpoenaed plaintiff's treating physicians. Joint Stip. at 18.

The ALJ has an affirmative duty to fully and fairly develop the record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, only "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

At the hearing, two medical experts, Dr. Sparks and Dr. Soltz, provided testimony concerning plaintiff's impairments and their impact on her ability to work. [AR at 358-66.] In particular, Dr. Sparks acknowledged that plaintiff's medical records contained an x-ray showing cardiomegaly. [AR at 361.] He stated that the medical records did not elaborate on the etiology of plaintiff's heart condition. [Id.] However, Dr. Sparks provided his opinion on what may have been the cause, stating: "The most likely things are, of course, her weight tends to raise the diaphragm, . . . displace the heart somewhat. And, second, she has had hypertension. She could have some left ventricular [INAUDIBLE] or thickening. It didn't seem to be a major factor as far as I could tell." [AR at 361-62.] Dr. Sparks also testified that there was no evidence in the record supporting the allegation of "calcium on the brain." [AR at 362.]

Thereafter, Dr. Soltz, a clinical psychologist, testified concerning plaintiff's mental impairment. In particular, Dr. Soltz stated that the medical records indicated that plaintiff had anxiety disorder but that she had never received psychiatric treatment. [AR at 27-29, 363.] He noted that a May 15, 2007, consultative psychological evaluation administered by Dr. Clifford

Taylor "puts into play . . . the likelihood that her symptoms are of questionable validity . . . ."[12] [Id.] Dr. Soltz commented that "the IQ and the memory test both seem inconsistent with the clinical interview according to Dr. Taylor." [Id.] He also noted Dr. Taylor's finding that plaintiff was not credible. [AR at 363-64.] Thereafter, Dr. Soltz concluded that plaintiff had only mild mental limitations.[13] [AR at 363-64.] With respect to plaintiff's allegation of mild mental retardation, Dr. Soltz testified that he did not know for sure whether plaintiff suffered from such a condition because the memory and IQ test scores were "totally invalid." [AR at 365.]

Here, the record was not ambiguous or inadequate so as to trigger any further duty on the part of the ALJ. For example, Dr. Taylor testified that plaintiff's cardiomegaly "didn't seem to be a major factor." [AR at 361-62.] He also testified that there was no evidence of "calcium on the brain." [AR at 362.] Indeed, a "Report of Contact" prepared by a Disability Determination Service ("DDS") analyst on September 19, 2005, reflects that "calcium deposit on the brain" was simply plaintiff's term for her vertigo. [AR at 150.] Furthermore, although Dr. Soltz stated that he was unsure of whether plaintiff had mild mental retardation, further development of the record was not warranted in light of the lack of any medical evidence suggesting such a condition existed. See Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability). The Court is hard-pressed to require further inquiry into plaintiff's alleged mental retardation when the memory and IQ tests conducted by Dr. Taylor were invalidated because of the finding of plaintiff's malingering. Remand is not warranted on this issue.

**VI.**

---

[12] In the May 15, 2007, evaluation, Dr. Taylor found that plaintiff had failed the test of memory malingering. [AR at 289, 293.] He noted that plaintiff's IQ and memory test scores, which suggested mental retardation, were invalid because she "failed [the] test of memory malingering, gave up easily on tasks, was a vague participant, and demonstrated inconsistencies between vocabulary, abilities, and attained test scores." [AR at 295.] Dr. Taylor concluded that "there is no credible evidence from a psychological standpoint of impairment in her ability to understand, remember, and carry out job instructions, maintain attention, concentration, persistence and pace, or adapt to day-to-day work activities." [Id.]

[13] Dr. Soltz stated that plaintiff's concentration and memory "might be a problem" and, therefore, opined that plaintiff should be limited to no more than four or five-step, moderately complex instructions. [AR at 364-65.]

11

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to further consider Ms. Spiedel's opinion. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.[14]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: June 25, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[14] As the ALJ's consideration on remand of the nurse practitioner's opinion may impact the remaining issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order. Rather, plaintiff's subjective symptoms and the lay witness testimony of plaintiff's daughter, Angel Rice, and sister-in-law, JaNae Pope, should be re-examined in light of the remand Order.